### PAINTING AND DRYWALL WORK PRESERVATION FUND, INC.

v.

### DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Appellant.

### No. 88–5076.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1991.

Decided June 21, 1991.

As Amended July 29, 1991.

---

John F. Daly, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, were on the brief, Washington, D.C., for appellant. R. Craig Lawrence and Nathan Dodell, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellant.

Pauline M. Sloan, with whom Terry R. Yellig was on the brief, Washington, D.C., for appellee.

Before BUCKLEY, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The Department of Housing and Urban Development appeals a district court order requiring it to divulge the names and addresses of construction workers that it had redacted from payroll records released pursuant to the Freedom of Information Act. The Department argues that the redacted information was properly withheld under Exemption 6 of the Act because its release would constitute an unwarranted invasion of the workers' privacy. Based on a Supreme Court interpretation of Exemption 6 that issued after the district court rendered its decision, we hold that the information was properly withheld.

## I. BACKGROUND

The Painting and Drywall Work Preservation Fund is a nonprofit cooperative of painting and drywall contractors and labor unions. It seeks to monitor compliance with laws affecting public-works projects in California. Among these is the Davis–Bacon Act, 40 U.S.C. §§ 276a–276a–5 (1988), as amended, which requires that workers on federal construction projects receive wages at the rate "prevailing" for similar workers in the locality. *Id.* § 276a(a). To ensure compliance, contractors must post applicable wage scales at the construction sites. *See id.* Another law, section 2 of the Copeland Anti–Kickback Act, 40 U.S.C. § 276c, empowers the Secretary of Labor to promulgate regulations to monitor and enforce prevailing-wage laws and requires contractors to submit certified payroll records to the contracting agency. These records list each worker's name, address, social security number, job classification, hourly pay, hours worked, wages, fringe benefits, and deductions. *See* 29 C.F.R. § 3.4(b) 1990. Both the Department of Labor and the Department of Housing and Urban Development ("HUD"), as the contracting agency, enforce compliance with these laws. In doing so, they often rely on complaints from workers and unions.

This litigation arose from the Fund's requests to HUD for certified payroll records relating to three HUD-assisted projects. Although HUD provided the records, it invoked Exemption 6 of the Freedom of Information Act, 5 U.S.C. § 552 (1988) ("FOIA") to withhold "personal identifiers" —names, social security numbers, and home addresses—that would have enabled the Fund to determine the earnings and work hours of individual employees. Exemption 6 permits withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6). After exhaust-

ing administrative remedies in futile efforts to secure the withheld names and addresses, the Fund sued in district court to compel their disclosure.

On cross-motions for summary judgment, the district court entered judgment for the Fund. Relying on an earlier case decided on similar facts, the district court reasoned that wage information is not an "embarrassing revelation" to which Exemption 6 should apply and that the Fund's interest in enforcing public works laws served the public interest. The court concluded that the public interest in disclosure outweighed the privacy interest. *See Painting & Drywall Work Preserv. Fund, Inc. v. HUD*, No. 86–2431, 1987 WL 16323 (D.D.C. Aug. 13, 1987) (citing *IBEW Local 41 v. HUD*, 593 F.Supp. 542 (D.D.C.1984), *aff'd*, 763 F.2d 435 (D.C.Cir.1985)). HUD appealed to this court, which stayed the case pending the Supreme Court's ruling in *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), and then again pending this court's application of that decision in *National Association of Retired Federal Employees v. Horner*, 879 F.2d 873 (D.C.Cir.1989), *cert. denied*, ── U.S. ──, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990) ("*NARFE*"), and *FLRA v. Department of the Treasury*, 884 F.2d 1446 (D.C.Cir.1989), *cert. denied*, ── U.S. ──, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990). In light of these decisions, we now reverse the district court's grant of summary judgment for the Fund.

## II. Discussion

■■■ In reviewing a district court's grant of summary judgment in a case where there is no quarrel as to the material facts, we focus on the court's application of relevant law. *See Reed v. NLRB*, 927 F.2d 1249, 1250 (D.C.Cir.1991). The Fund does not dispute that the certified payroll records constitute "similar files" within the scope of Exemption 6. In applying this exemption, a court must identify the privacy interest served by withholding information and then the public interest that would be advanced by disclosing it. Having done

so, the court must determine " 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.' " *Id.* at 1251 (quoting *NARFE*, 879 F.2d at 874).

■■■ *Reporters Committee* defines privacy as encompassing "the individual's control of information concerning his or her person." 489 U.S. at 763, 109 S.Ct. at 1476. That information includes the prosaic (*e.g.*, place of birth and date of marriage) as well as the intimate and potentially embarrassing. *See NARFE*, 879 F.2d at 875. Because FOIA requires disclosure to "any person," the balancing of the privacy against the public interest cannot depend on the identity and specific purpose of the party requesting the information. *See id.; accord Hopkins v. HUD*, 929 F.2d 81, 87 (2d Cir.1991). If it must be released to one requester, it must be released to all, regardless of the uses to which it might be put.

In *NARFE*, where an organization promoting the interests of federal annuitants sought a list of such individuals, we recognized that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." 879 F.2d at 875. In *FLRA*, where a union sought lists of federal employees in certain bargaining units, we concluded that "federal employees[ ] have privacy interests in their names and home addresses that must be protected." 884 F.2d at 1453. As in *Hopkins*, the records at issue here involve not merely names, addresses, and the characteristic that defines the list (such as employment status, or employment on a particular construction project), but also a full weekly accounting of hourly wages, hours worked, deductions, and net pay. *See* 929 F.2d at 86.

■■■ The Fund maintains, on the authority of *IBEW Local 5 v. HUD*, 852 F.2d 87 (3d Cir.1988), that construction workers have a lesser privacy interest in their salaries than do other employees because the Davis–Bacon Act requires the posting of wage scales at the job site, thereby reducing the workers' reasonable expectation of privacy in their pay. *See id.* at 87. We

note, first, that *IBEW Local 5* predated *Reporters Committee* and is therefore of "doubtful authority." *Hopkins*, 929 F.2d at 87. Second, we disagree with the Third Circuit's premise that the Davis–Bacon Act significantly diminishes the workers' expectations of privacy; the Act mandates the posting of wage scales, but it does not reveal actual earnings of individual employees. *See* 40 U.S.C. § 276a(a), *see also Hopkins*, 929 F.2d at 87 (holding that partial disclosure does not alter the privacy interests affected by broader disclosure through FOIA). Nor are their expectations of privacy diminished by the Copeland Act, which requires that certified payroll information be provided to federal agencies but does not require disclosure to the public at large. *See* 40 U.S.C. § 276c.

■ If, on the other hand, we were to find that the Fund is entitled to receive the information sought, the workers would experience a significant diminution in their expectations of privacy because that same information would also have to be provided, for example, to creditors, salesmen, and union organizers. The dissemination of this sort of information about private citizens "is not what the framers of the FOIA had in mind." *Reporters Committee*, 489 U.S. at 765, 109 S.Ct. at 1477. We conclude, therefore, that disclosure of the requested data would constitute a substantial invasion of privacy.

Having so decided, we must now determine the nature of the public interest in disclosure against which the workers' privacy interest is to be balanced. In assessing the former, we are to consider "the nature of the requested document and its relationship to the basic purpose of [FOIA] to open agency action to the light of public scrutiny." *Reporters Committee*, 489 U.S. at 772, 109 S.Ct. at 1481 (internal quotes omitted), *quoted in NARFE*, 879 F.2d at 878. The specific public interest on which *Reporters Committee* requires us to focus is "the citizens' right to be informed about what their government is up to." 489 U.S. at 773, 109 S.Ct. at 1481 (internal quotes omitted). As information that might reveal the failure of contractors to comply with

relevant laws does not in itself cast light on what HUD is up to, we can find no obvious public interest in its disclosure that is relevant to this analysis. *See id.* at 774–75, 109 S.Ct. at 1482–83 (distinguishing information regarding agency conduct and information regarding the activities of private persons).

The Fund argues that because it can use the information to monitor enforcement efforts by HUD and the Department of Labor, the information should be released. We have recognized that a relevant public interest could exist where "the names of current workers might provide leads for an investigative reporter seeking to ferret out what 'government is up to.' " *FLRA*, 884 F.2d at 1452. As in *FLRA*, however, the Fund "has an alternative means of access to current workers ...—face-to-face conversation." *Id.* We recognize that workers might be more willing to talk if reached at home rather than at the workplace, and that lists give access to former as well as current employees. But again, as in *FLRA*, these advantages do little more than "raise[ ] the public interest in disclosure above the 'nothing' at which *NARFE* valued the disclosure interest in retirees' names and addresses." *Id.* at 1452–53.

As this attenuated public interest in disclosure does not outweigh the construction workers' significant privacy interest in the requested information, *see Hopkins*, 929 F.2d at 88, we conclude that HUD acted within its authority in withholding their names and other personal identifiers.

### III. CONCLUSION

Workers have a substantial privacy interest in the personal information contained in the certified payroll records requested by the Fund. This interest outweighs the limited public interest in disclosure—namely, the possibility that the information would facilitate investigation of government efforts to enforce the Davis–Bacon and Copeland Acts. Because disclosure would result in a "clearly unwarranted invasion of

personal privacy," we reverse the judgment of the district court.

*So ordered.*