

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-1998

# Local Union 19 v. US Dept Veterans

Precedential or Non-Precedential:

Docket 97-1116,97-1293

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Local Union 19 v. US Dept Veterans" (1998). *1998 Decisions.* Paper 26.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/26

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1116 & 97-1293

SHEET METAL WORKERS INTERNATIONAL
ASSOCIATION, LOCAL UNION NO. 19

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 96-cv-04120)

Argued November 18, 1997

Before: SCIRICA and LEWIS, Circuit Judges
and ACKERMAN, District Judge*

(Filed February 9, 1998)

_____

*The Honorable Harold A. Ackerman, United States District Judge for the
District of New Jersey, sitting by designation.

JOHN F. DALY, ESQUIRE (ARGUED)
United States Department of Justice
Civil Division, Appellate Staff,
 Room 7124
10th and Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

LEONARD SCHAITMAN, ESQUIRE
United States Department of Justice
Civil Division, Appellate Staff,
 Room 9152
601 D Street, N.W.
Washington, D.C. 20530-0001

JOAN K. GARNER, ESQUIRE
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

 Attorneys for Appellant

CHARLES T. JOYCE, ESQUIRE
 (ARGUED)
Spear, Wilderman, Borish, Endy,
 Spear & Runckel
230 South Broad Street, Suite 1400
Philadelphia, Pennsylvania 19102

 Attorney for Appellee

TERRY R. YELLIG, ESQUIRE
Sherman, Dunn, Cohen, Leifer &
 Yellig, P.C.
1125 Fifteenth Street, N.W.,
 Suite 801
Washington, D.C. 20005

 Attorney for Amicus Curiae
 Appellee, Building and
 Construction Trades Department,
 AFL-CIO

2

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This case involves an interpretation of the Freedom of Information Act, 5 U.S.C.A. S 552 (West 1996 & Supp. 1997). The issue on appeal is the continuing vitality of our opinion in International Bhd. of Elec. Workers Local Union No. 5 v. United States Dep't of Hous. and Urban Dev. , 852 F.2d 87 (3d Cir. 1988) ("IBEW"). In IBEW, we held the Freedom of Information Act's S 552(b)(6) privacy exemption could not prevent disclosure of certain wage related information which the union used to measure compliance with the Davis-Bacon Act, 40 U.S.C.A. SS 276a-276a-7 (West 1986 & Supp. 1997). The specific issue here requires us to once again balance the public interest served by disclosure against the harm resulting from the invasion of privacy in light of intervening decisions from the Supreme Court.

I.

A.

Plaintiff-appellee, the Sheet Metal Workers' International Association, Local Union No. 19, monitors "whether federal agencies are enforcing private contractors' compliance with [the Davis-Bacon Act]." Sheet Metal Workers' Int'l Ass'n Local Union No. 19 v. United States Dep't of Veterans Affairs, No. 96-4120, 1997 WL 34681, at *1 (E.D. Pa. Jan. 28, 1997). "The Davis-Bacon Act requires that the wages of work[ers] on a Government construction project shall be `not less' than the `minimum wages' specified in a schedule furnished by the Secretary of Labor." United States v. Binghamton Const. Co., 347 U.S. 171, 172, reh'g denied, 347 U.S. 940 (1954). Essentially, it provides "that all laborers and mechanics working on federally funded construction projects be paid not less than the prevailing wage in the locality in which the work is performed." IBEW, 852 F.2d at 88.

3

"The Davis-Bacon Act is enforced in part through the Copeland Act, 40 U.S.C. S 276c, which requires federal contractors to submit weekly payrolls to the government." Id. The Copeland Act authorizes the Secretary of Labor to make "reasonable regulations for contractors and subcontractors engaged in the construction, prosecution, completion or repair of public buildings . . . including a provision that each contractor and subcontractor shall furnish weekly a statement with respect to wages paid each employee during the preceding week." 40 U.S.C.A. S 276c (West 1986).

Contractors' payrolls must contain: "the name, address, and Social Security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bonafide fringe benefits or cash equivalents thereof . . . ), daily and weekly number of hours worked, deductions made and actual wages paid." 26 C.F.R. S 5.5(a)(3)(I) (1997). The public agency hiring the contractor must ensure compliance with these regulations. See 26 C.F.R. S 5.6(a)(3) ("The federal agency shall cause such investigations to be made as may be necessary to assure compliance with the labor standards clauses required by S 5.5 and the applicable statutes listed in S 5.1").

The union contends it uses this information (1) to ascertain whether the contractor is inflating the numbers of employees actually working on the job site; (2) to compare the employees' listed job classifications with the work actually performed on the job site; (3) to determine whether the contractor is using the same employee for two different classifications on the same job; (4) to check the consistency over time of the rate of pay for a particular classification; (5) to determine whether the employer is using the proper ratio of mechanics to journeymen apprentices; and (6) to determine if the apprentices are properly registered with the State Director of Apprenticeship and Training, whether they are working out of their classification, and whether they are receiving the proper rate of pay. (See App. at 50-52 (Clagg Aff. PP 10-12)).

4

B.

Boro Developers, Inc. is a construction company who contracted with defendant-appellant, the United States Department of Veterans Affairs. The Department of Veterans Affairs hired Boro to assist in the renovation of the Veterans Administration hospital in Wilmington, Delaware.

On January 16, 1996, the union requested from the Department of Veterans Affairs (1) copies of the certified payrolls Boro submitted for the hospital renovation, (2) copies of apprentice registration forms, and (3) "the applicable Prevailing Wage determination established by the Department of Labor" for the hospital renovation. (App. at 8 (Compl. Ex. A)).1 By letter dated February 20, 1996, the Department of Veterans Affairs responded to the union's request: "Due to privacy act considerations, names, Social Security numbers, fringe benefits, etc. [will] be redacted." (App. at 11 (Compl. Ex. B)).

The union renewed its request on March 6, 1996. (See App. at 13 (Compl. Ex. C)). A formal appeal was filed on March 20, 1996 through counsel, reiterating the union's demand: "the [Department of Veterans Affairs] is entitled under the FOIA only to redact Social Security numbers . . . . All other information . . . including employees' names, addresses, job classifications and pay rates, must be provided in full." (App. at 16-17 (Compl. Ex. D)).

On May 3, 1996, the Department of Veterans Affairs issued its final denial, relying primarily on SS 552(b)(6) and 552(b)(7)(C) of the Freedom of Information Act:

> Some of the information contained on the records you seek is personal in nature [S 552(b)(6)], and the records themselves are considered to be law

---

1. "[A]pprentice registration forms show which employees of the contractor have been registered as apprentices by the State." (App. at 50 (Clagg Aff. P 9)). The Prevailing Wage Determination is "a list of all applicable pay rates for various job classifications . . . . [assessed] by the Department of Labor Wage and Hour Division after conducting a survey of local private contractors to determine what the`prevailing rate' is." (Id. (Clagg Aff. P 7)).

5

enforcement records [S 552(b)(7)(C)]. The personal information in the requested records includes the record subjects' names and Social Security numbers, their home addresses, sex and racial status, together with a breakout of their payroll withholdings and net pay. As records containing such personal information, these records fall within the scope of records that are subject to the aforementioned exemptions.

* * *

the wages paid for work performed, the rates and job classifications of the payees should be available to the public.

* * *

please understand that individual identifiers, such as names, and Social Security numbers, addresses, sex, race, payroll withholdings and net pay, will be redacted.

(App. at 40-41(Compl. Ex. E)).

C.

On June 3, 1996, the union filed a complaint in the United States District Court for the Eastern District of Pennsylvania seeking disclosure under the Freedom of Information Act. (See App. at 4-5 (Compl.P 13)). The complaint requested, inter alia, (1) that the court order the Department of Veterans Affairs to provide the requested documents; (2) that, in the alternative, the Department of Veterans Affairs furnish the court with the records for an in camera inspection to determine if any exemptions apply; and (3) that the court enter a declaratory judgment that the Department of Veterans Affairs cannot rely on S 552(b)(6) as authority for withholding the requested information. (App. at 5-6 (Compl. Wherefore Cl.)).

The Department of Veterans Affairs moved for summary judgment, arguing SS 552(b)(6) and 552(b)(7)(C) prohibit the disclosure of the requested information. The unionfiled a cross-motion for summary judgment. The district court granted the union's cross-motion for summary judgment and denied the Department of Veterans Affairs's motion.

6

The able district judge described his task as follows: "to balance the privacy interest of the Boro employees in nondisclosure of the payroll information against`the extent to which disclosure would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.' " Sheet Metal Workers', Local No. 19, 1997 WL 34681, at *4 (citation omitted). Relying largely on our well reasoned opinion in IBEW, the district court nonetheless recognized a string of recent appellate decisions which questioned the rationale of that decision:2

> These cases, of course, cannot overrule IBEW. Only the Supreme Court and the Third Circuit can overrule that case, and neither court has done so expressly. The position taken by the Second, Ninth, Tenth, and District of Columbia circuits cannot bind this court.

* * *

> The court recognizes that the case law in this area is evolving as a result of Supreme Court decisions, and that Courts of Appeals have taken a closer look at employees' privacy interests in light of the Supreme Court's discussion of the issue. This court, however, is bound by the rulings of the Third Circuit until that court changes its position or its decisions are overruled by the Supreme Court. The court concludes that the IBEW decision controls this case, has not been overruled, and continues to be the law in this circuit.

> The fact that the court has concluded that it is bound by the rule set forth in IBEW does not mean that the court agrees with the Third Circuit's balancing

---------------------------------------------------------------

2. See United States Dep't of Defense, et al. v. Federal Labor Relations Auth., 510 U.S. 487 (1994); United States Dep't of Justice et al. v. Reporters Committee For Freedom of the Press, 489 U.S. 749 (1989); Sheet Metal Workers Int'l Ass'n Local No. 9 v. United States Air Force, 63 F.3d 994 (10th Cir. 1995); Painting Indus. of Haw. Market Recovery Fund v. United States Dep't of the Air Force, 26 F.3d 1479 (9th Cir. 1994); Painting and Drywall Work Preservation Fund v. Department of Hous. and Urban Dev., 936 F.2d 1300 (D.C. Cir. 1991) (considering IBEW doubtful authority); Hopkins v. United States Dep't of Hous. and Urban Dev., 929 F.2d 81 (2d Cir. 1991) (same).

7

of interests in that case, especially as it relates to disclosure of the employees' names and home addresses. The court finds considerable merit in the position taken by the Second, Ninth, Tenth, and District of Columbia circuits and suggests that the Third Circuit consider using the facts of this case to reexamine IBEW in light of these decisions.

Sheet Metal Workers', Local No. 19, 1997 WL 34681, at *6 & n.1 (citations omitted). The Department of Veterans Affairs appealed.

II.

Generally, we apply a two-tiered test when reviewing an order granting summary judgment in proceedings seeking disclosure under the Freedom of Information Act:

The reviewing court must first decide whether the district court had an adequate factual basis for its determination.

* * *

[I]t must then decide whether that determination was clearly erroneous. Under the clearly erroneous standard, this Court may reverse only if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence. The two tiered standard of review of the district court's determination that a particular document is or is not properly subject to exemption does not, of course, preclude plenary review of issues of law.

McDonnell v. United States, 4 F.3d 1227, 1242 (3d Cir. 1993) (citations omitted).3

_____

3. This standard does not receive uniform application among the courts of appeals. See Sheet Metal Workers Int'l Assoc. Local No. 9 v. United States Air Force, 63 F.3d 994, 997 (10th Cir. 1995) (recognizing "there may be some disagreement among other courts as to the precise standard of review of a grant of summary judgment in a FOIA case").

In this case, however, the district court based its grant of summary judgment on our ruling in International Bhd. of Elec. Workers Local Union No. 5 v. United States Dep't of Hous. and Urban Dev., 852 F.2d 87 (3d Cir. 1988). In that event, we exercise plenary review. McDonnell, 4 F.3d at 1242.

III.

A.

"The Freedom of Information Act was enacted to facilitate public access to Government documents." Sheet Metal Workers Int'l Assoc. Local No. 9 v. United States Air Force, 63 F.3d 994, 996 (10th Cir. 1995). See also Hopkins v. United States Dep't of Housing and Urban Dev., 929 F.2d 81, 83 (2d Cir. 1991) (the Freedom of Information Act "was enacted in 1966 to create a broad right of access to official information") (citation omitted). There is a presumption in favor of disclosure, and "FOIA expressly places the burden `on the agency to sustain its action.' " United States Dep't of Justice et al. v. Reporters Committee for Freedom of the Press, et al., 489 U.S. 749, 755 (1988) (citations omitted). See also United States Dep't of Defense et al. v. Federal Labor Relations Auth., 510 U.S. 487, 494 (1994)

_____

Compare Painting Indus. of Haw. Market Recovery Fund v. United States Dep't of the Air Force, 26 F.3d 1479, 1482 (9th Cir. 1994) ("we apply a two-step standard of review to FOIA cases. We determine whether the district court had an adequate factual basis on which to make its decision and, if so, review for clear error the district court's finding that
the documents were exempt") (citation omitted), with, McDonnell, 4 F.3d at 1241-42 ("summary judgment in an FOIA case`takes on a unique configuration.' As a result, the familiar standard of appellate review promulgated by Federal Rule of Civil Procedure 56(c) does not apply"), and, Petroleum Info. Corp. v. United States Dep't of the Interior, 976 F.2d
1429, 1433 & n.3 (D.C. Cir. 1992) ("This circuit applies in FOIA cases the same standard of appellate review applicable to generally to summary judgments. The Ninth Circuit, we note, applies a clearly erroneous standard to district court determinations on summary judgment in FOIA cases") (citation omitted).

("disclosure, not secrecy, is the dominant objective of FOIA") (citation omitted).

"Public access to government information is not, however, `all encompassing.' " Sheet Metal Workers', Local No. 9, 63 F.3d at 996 (citation omitted). The act "reflects a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." Dep't of Defense, 510 U.S. at 494 (citations omitted).

"Congress exempted nine categories of documents from the FOIA's broad disclosure requirements." Reporters Committee, 489 U.S. at 755. The two categories that are relevant here, SS 552(b)(6) and (b)(7)(C), exclude from disclosure requirements:

> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; and (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. S 552(b)(6), (b)(7)(C).

Resolution of a case under S 552(b)(6) "depends on a discrete inquiry: whether the disclosure of [the requested information] would constitute a clearly unwarranted invasion of personal privacy of the bargaining unit employees within the meaning of the FOIA." Dep't of Defense, 510 U.S. at 495. As the Supreme Court held:

> First, in evaluating whether a request for information lies within the scope of a FOIA exemption . . . a court must balance the public interest in disclosure against the interest Congress intended the exemption to protect.
>
> Second, the only relevant `public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the `core purpose of the FOIA,' which is `contributing significantly to public understanding of the operations or activities of the government.'

10

* * *

    Third, whether an invasion of privacy is warranted
    cannot turn on the purposes for which the request for
    information is made. Because `Congress clearly
    intended' the FOIA `to give any member of the public as
    much right to disclosure as one with a special interest
    in a particular document,' except in certain cases
    involving claims of privilege, `the identity of the
    requesting party has no bearing on the merits of his or
    her FOIA request.'

Id. at 495-96 (citations omitted).

With respect to the privacy interest protected:

    the cases sometimes characterized as protecting
    `privacy' have in fact involved at least two different
    kinds of interests. One is the individual interest in
    avoiding disclosure of personal matters, and another is
    the interest in independence in making certain kinds of
    important decisions . . . . both the common law and
    the literal understandings of privacy encompass the
    individual's control of information concerning his or
    her person.

Reporters Committee, 489 U.S. at 762-63 (citations omitted).
See also Painting Indus., 26 F.3d at 1482 ("We cannot limit
our evaluation of the effects of disclosure to the requesting
party's particular purpose in seeking disclosure. We must
evaluate both public benefit and the potential invasion of
privacy by looking at the nature of the information
requested and the uses to which it could be put if released
to any member of the public"); Painting and Drywall Work
Preservation Fund, Inc. v. Dep't of Hous. and Urban Dev.,
936 F.2d 1300, 1302 (D.C. Cir. 1991) ("Reporters Committee
defines privacy as encompassing `the individual's control of
information concerning his or her person.' That information
includes the prosaic . . . as well as the intimate and
potentially embarrassing").

Section 552(b)(7)(C) "provides greater protection from
disclosure than exemption 6." Sheet Metal Workers', Local
No. 9, 63 F.3d at 996 (citation omitted). See also Dep't of
Defense, 510 U.S. at 496 n.6 ("Reporters Committee

11

provides the same guidance in making this identification in Exemption 7(C) and Exemption 6 cases"); Reporters Committee, 489 U.S. at 756 ("the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files"); Hopkins, 929 F.2d at 87 n.5 ("While Reporters Committee dealt with Exemption 7(C), its teachings apply to the analogous provisions of Exemption 6 as well") (citation omitted).

Because S 552(b)(7)(C) provides greater protection, our analysis of S 552(b)(6) obviates the need to examine the Department of Veterans Affairs's S 552(b)(7)(C) argument. See Sheet Metal Workers', Local No. 9, 63 F.3d at 998-99 ("Because we hold that exemption 6 protects the information sought from disclosure, we need not address whether the more protective provisions of exemption 7(C) would also prevent disclosure of that information"); Painting Indus., 26 F.3d at 1486 ("Because we hold that Exemption 6 justifies the government's action in providing redacted copies of certified payroll records requested by the labor organizations, we need not reach the Exception 7(C) issue").

B.

1.

At present, International Bhd. of Elec. Workers Local Union No. 5 v. United States Dep't of Hous. and Urban Dev., 852 F.2d 87 (3d Cir. 1988), provides the rule of decision in this circuit. In IBEW, the union asked the Department of Housing and Urban Development to release the names, addresses, and Social Security numbers of non-union employees working for a federal HUD contractor. HUD furnished the payroll records, which included the employees' work classifications, hours worked, rates of pay, and gross and net pay levels. But citing the S 552(b)(6) privacy exemption, HUD deleted the employees' names, home addresses, and Social Security numbers. The district court granted summary judgment to the union, compelling HUD to furnish this information.

12

We described the appropriate appellate inquiry as follows: "to determine whether the information sought is subject to privacy protection and, if so, whether the invasion of privacy is `clearly warranted.' This inquiry involves a balancing of public interest served by disclosure against the harm resulting from the invasion of privacy." IBEW, 852 F.2d at 89.

With respect to the Social Security numbers, we found a strong privacy interest: "the extensive use of Social Security numbers as universal identifiers in both the public and private sectors is one of the most serious manifestations of privacy concerns in the nation." Id. (citations omitted). We failed to discover any countervailing public interest justifying their release: "the Union has offered no public interest that would be furthered by the release of the Social Security numbers . . . . Faced with an identifiable privacy interest, we must conclude that the release of the Social Security numbers would constitute a clearly warranted invasion of privacy and is therefore barred by exemption 6." Id.

But release of the names and addresses, we thought, implicated different privacy concerns:

> First . . . individuals generally have a meaningful interest in the privacy of information concerning their homes which merits some protection. In particular, individuals have some privacy interest in their home addresses, although the invasion of privacy effected by such disclosure is not as serious as it would be by the disclosure of more personal information. Second, the employees have a privacy interest in their salaries. This interest is not as great for employees of federal contractors as for other employees, however, since the Davis Bacon Act requires the posting of wage scales at the job site. Although it is true that the posted wage scales link wages with positions rather than names, thereby preserving some degree of privacy in salary levels, the posting nevertheless reduces the workers reasonable expectation of privacy in their salaries.

Id. (citation omitted).

13

We found the union's ability to monitor a contractor's compliance with -- and the awarding agencys' enforcement of -- the Davis-Bacon Act a sufficiently strong countervailing public interest to warrant disclosure.

> [I]f the release of names and addresses of employees of government contractors makes it more likely that contractors will abide by the Act's requirements, the release of the information is in the public interest.

> Although the redacted wage reports would in some cases enable the Union to detect violations of the Davis-Bacon Act, they provide no means for auditing the representations of the contractor. If the contractor misrepresents his weekly wage information, the only way to determine if the Davis-Bacon act is being violated is to contact the contractor's employees and to compare their responses to those given by the contractor. We conclude, therefore, that the release of the names and addresses would facilitate the Union's investigation of possible Davis-Bacon Act violations, and thereby would further the public interest.

* * *

> [T]he mere fact that federal agencies are directly responsible for enforcing the Davis-Bacon Act does not mean that the Union has no role to play in furthering the public interest. If enforcement of the Act is in the public interest, then more effective enforcement of the Act is also in the public interest.

* * *

> Moreover, the Union's interest in monitoring HUD's enforcement of the Davis Bacon Act is exactly the kind of public interest Congress intended FOIA to facilitate.

* * *

> The Union need not show that the information it seeks will in fact prove useful . . . . the fact that the Union has a proprietary interest in protecting its wages does not diminish the public interest in the use of the names and addresses to enhance Davis-Bacon Act enforcement. In addition, we note that HUD has

14

neither offered an argument nor presented evidence that the Union seeks the information only as a subterfuge to harass nonunion members or to solicit new membership. Absent such a challenge, we must accept the Union's stated purpose in seeking the names and addresses.

Id. at 90-92 (citations and internal quotations omitted).

2.

Subsequent to our decision in IBEW, the United States Supreme Court decided two cases which attached more significance to the privacy interests of employees, United States Dep't of Justice et al. v. Reporters Committee For Freedom of the Press, 489 U.S. 749 (1989), and United States Dep't of Defense, et al. v. Federal Labor Relations Auth., 510 U.S. 487 (1994). In Reporters Committee, a news correspondent and the Reporters Committee for Freedom of the Press unsuccessfully requested "rap sheets" -- documents containing descriptive information as well as a history of arrests, charges, convictions, and incarcerations -- from the Federal Bureau of Investigation. Finding the privacy interests of private citizens with rap sheets outweighed any public interest served by disclosure, the Supreme Court concluded S 552(b)(7)(C) allowed the FBI to withhold the requested information:

The privacy interest in maintaining the practical obscurity of rap-sheet information will always be high. When the subject of such rap sheet is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of `what the Government is up to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA based public interest in disclosure is at its nadir. Such a disparity on the scales of justice holds for a class of cases without regard to individual circumstances; the standard virtues of bright line rules are thus present, and the difficulties attendant to ad hoc adjudication may be avoided. Accordingly, we hold as a categorical matter that a third party's request for law enforcement records or information about a private

15

citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks `no official information' about a government agency, but merely records that the Government happens to be storing, the invasion of privacy is `unwarranted.'

Reporters Committee, 489 U.S. at 780.

In Dep't of Defense, the Supreme Court decided "whether disclosure of the home addresses of federal civil service employees by their employing agency pursuant to a request made by the employees' collective bargaining representative under the Federal Service Labor Management Relations Statute . . . would constitute a clearly unwarranted invasion of the employees' personal privacy." Dep't of Defense, 510 U.S. at 489. The Supreme Court characterized the public interest in disclosure of the addresses as "negligible": "Disclosure of the addresses might allow the unions to communicate more effectively with employees, but it would not appreciably further the citizens right to be informed about what their government is up to. Indeed, such disclosure would reveal little or nothing about the employing agencies or their activities." Id. at 497.

The employees' privacy interests in the non-disclosure of their home addresses, however, caused greater concern:

Because a very slight privacy interest would suffice to outweigh the relevant public interest, we need not be exact in our quantification of the privacy interest. It is enough for present purposes to observe that the employees' interest in nondisclosure is not insubstantial.

* * *

Whatever the reason that these employees have chosen not to become members of the union or to provide the union with their addresses, however, it is clear that they have some non trivial privacy interest in nondisclosure, and in avoiding the influx of union related mail, and, perhaps, union related telephone calls or visits, that would follow disclosure.

Many people simply do not want to be disturbed at home by work related matters. Employees can lessen

the chance of such unwanted contacts by not revealing their addresses to their exclusive representative. Even if the direct union /employee communication facilitated by the disclosure of home addresses were limited to mailings, this does not lessen the interest that individuals have in preventing at least some unsolicited, unwanted mail from reaching them at their homes. We are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions. Moreover, when we consider that other parties, such as commercial advertisers and solicitors, must have the same access under FOIA as the unions to the employee address lists sought in this case it is clear that the individual privacy interest that would be protected by nondisclosure is far from insignificant.

Id. at 500-01.

Reporters Committee and Dep't of Defense demonstrate both an increased appreciation for employees' privacy and a concomitant decrease in the belief that disclosure of personal information for the purpose of monitoring Davis-Bacon Act compliance serves a public interest.

3.

Courts of appeals decisions following Reporters Committee and Dep't of Defense express the same view with respect to the relevant private and public interests. In Sheet Metal Workers Int'l Assoc. Local No. 9 v. United States Air Force, 63 F.3d 994 (10th Cir. 1995), the Court of Appeals for the Tenth Circuit absolved the United States Air Force from an obligation to release individual names with certified payrolls and apprentice registration lists.

[T]hree circuits have held that employees of private contractors performing federal construction projects have a substantial privacy interest in personalfinancial information with personal identifiers linking the individual to the financial information. They have further held that that interest outweighs any recognized public interest in the disclosure of such information. Whether viewed as relevant to the

17

magnitude of the privacy interest at issue, or to the appropriate balance between that interest and the public interest in disclosure, we see no principled distinction between names alone as personal identifiers, or names and addresses. Either one provides the critical connection between personal information and the individual to whom that information relates.

Id. at 998.

Painting Indus. of Haw. Market Recovery Fund v. United States Dep't of Air Force, 26 F.3d 1479 (9th Cir. 1994) considered similar information private:

In the cases before us, requesters seek a list of people engaged in the construction trade, broken into their particular occupational classification. Undoubtedly, such a list would be of interest to people working in the construction trades . . . . [T]here is a substantial probability that the disclosure will lead to the use of the list by marketers and a concomitant invasion of the workers' right to be let alone.

* * *

The requesters here not only seek names and addresses, but also particularized information about wages. We agree with those circuits that have considered the issue that significant privacy interests are implicated by the release of this information.

Id. at 1483-85 (citations omitted).

Painting and Drywall Work Preservation Fund, Inc. v. Department of Hous. and Urban Dev., 936 F.2d 1300 (D.C. Cir. 1991) reached a similar result with respect to a Freedom of Information Act request to HUD to supply certified payrolls. Although HUD supplied the records, it invoked S 552(b)(6) and withheld names, Social Security numbers, and home addresses. The Court of Appeals for the District of Columbia Circuit found disclosure would invade the employees' privacy, contravening the purpose of the Freedom of Information Act: "If we were tofind that the Fund is entitled to receive the information sought, the workers would experience a significant diminution in their

18

expectations of privacy because that same information would also have to be provided, for example, to creditors, salesmen, and union organizers." Id. at 1303 (citation omitted). The possibility of this intrusion outweighed any public interest in disclosure: "As information that might reveal the failure of contractors to comply with relevant laws does not in itself cast light on what HUD is up to, we can find no obvious public interest in its disclosure that is relevant to this analysis." Id. (citation omitted).

In Hopkins v. United States Dep't of Hous. and Urban Dev., 929 F.2d 81 (2d Cir. 1991) the union requested certified payroll records from HUD to monitor Davis-Bacon Act compliance. Relying on S 552(b)(6), HUD deleted all employee names, addresses, and Social Security numbers.

Siding with HUD, the Court of Appeals for the Second Circuit found "individual private employees have a significant privacy interest in avoiding disclosure of their names and addresses, particularly where, as here, the names and addresses would be coupled with personal financial information." Id. at 87 (citations omitted). The court ultimately considered disclosure unwarranted:

> disclosure of the names and addresses sought by appellant would shed no light on HUD's performance in enforcing the prevailing wage laws. Rather, disclosure of this information would serve the public interest only insofar as it would allow the Union to contact individual employees, who may then dispute the accuracy of the data reflected in the records, and so reveal violations of the prevailing wage laws that HUD, through proper diligence, should have detected. Were we to compel disclosure of personal information with so attenuated a relationship to governmental activity, however, we would open the door to disclosure of virtually all personal information, thereby eviscerating the FOIA privacy exemptions.

Id. at 88 (citations omitted). According to Hopkins, the public interest served by disclosure was not outweighed by the employees' privacy interests "in controlling dissemination of their names, addresses and wage information. Indeed, the likelihood that the union would

19

use the requested identifying information to contact employees at their homes dramatically increases the already significant threat to the employees privacy interests that disclosure of this information would entail." Id. (citation omitted).

C.

1.

After considering the views expressed by the Supreme Court in Reporters Committee and Dep't of Defense and reviewing the recent decisions from other courts of appeals, we believe we should modify our decision in IBEW. Generally, "a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel." Reich v. D.M. Sabia Co., 90 F.3d 854, 858 (3d Cir. 1996) (citations omitted).4 Nonetheless, "a panel may reevaluate a precedent in light of intervening authority and amendments to statutes or regulations. Our sister circuits abide by that self-same principle." Id. (citing, inter alia, Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir.)("An existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling"), cert. denied, 116 S. Ct. 51 (1995)). See also Planned Parenthood of S.E. Pa. v. Casey, 947 F.2d 682, 698 (3d Cir. 1991) ("a change [by the Supreme Court] in the legal test or standard governing a particular area is a change binding on lower courts that makes results reached under a repudiated legal standard no longer binding"), aff'd in part, rev'd in part, 505 U.S. 833 (1992).

Although the intervening decisions from the Supreme Court in Reporters Committee and Dep't of Defense do not answer the precise issue presented here, their reasoning
_____

4. See Third Circuit I.O.P. 9.1 ("It is the tradition of this court that the
holding of a panel in a reported opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a published opinion of a previous panel. Court in banc consideration is required to do so").

and holdings clearly counsel re-examination of our reasoning and holdings in IBEW.5

2.

The union contends there is a strong public interest in monitoring agency enforcement of the prevailing wage law because the information sought contributes significantly to public understanding of the operations or activities of the government. Congress, the union argues, enacted both the Davis-Bacon Act and the Copeland Act to facilitate regulation of contractors. According to the union, the records requested would make it easier to rectify any mistake or omission that government agencies might make during such enforcement activities. Redacted payrolls, the union complains, require blind acceptance of the contractor's unverifiable reports.

Furthermore, the union characterizes the employees' privacy interest as insignificant because (1) the addresses are available from other public sources; (2) the employees' wage scales are posted publicly at the job site; and (3) the employees received no promises of confidentiality with respect to the requested data.

a.

We believe the union overestimates the public interest to be served by disclosure. "[T]he only relevant public interest in disclosure to be weighed . . . is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." Dep't of Defense, 510 U.S. at 495 (citations omitted). The release of names, addresses, and similar "private" information reveals little, if anything, about the operations of the Department of

_____

5. We are not alone in recognizing that the conclusion reached in IBEW has been superseded by Supreme Court authority. See Painting and Drywall, 936 F.2d at 1303 (IBEW "predated Reporters Committee and is therefore of `doubtful authority' ") (citation omitted); Hopkins, 929 F.2d at 87 (IBEW "[w]as decided prior to Reporters Committee . . . and [is] of doubtful authority in light of that opinion").

21

Veterans Affairs. See id. at 497 ("Disclosure of the addresses . . . would not appreciably further the citizens' right to be informed about what their government is up to. Indeed, such disclosure would reveal little or nothing about the employing agencies or their activities"); Painting Indus., 26 F.3d at 1486 (referring to "the marginal additional usefulness that the names and addresses would serve in uncovering `what the government is up to' "); Painting and Drywall, 936 F.2d at 1303 ("As information that might reveal the failure of contractors to comply with relevant laws does not in itself cast light on what HUD is up to, we can find no obvious public interest in its disclosure that is relevant to this analysis"); Hopkins, 929 F.2d at 88 ("disclosure of the names and addresses sought by appellant would shed no light on HUD's performance in enforcing prevailing wage laws . . . . [but] would serve the public interest only insofar as it would allow the Union to contact individual employees").

It would appear that since our decision in IBEW nine years ago, the Supreme Court has refined and reformulated the applicable standard measuring the "core purpose" of the Freedom of Information Act, namely contributing significantly to public understanding of the operations or activities of government. After the decisions in Reporters Committee and Department of Defense, no court of appeals has given much weight to the monitoring function. We are compelled to do likewise. In a broad sense of course, the public has an interest in whether a federal agency fairly and adequately enforces prevailing wage laws. See Hopkins, 929 F.2d at 88 ("While assertions of public interest in `monitoring' government operations `have not been viewed favorably by the courts,' we accept this interest as within the ambit of public interest recognized in Reporters Committee") (citations omitted). But even assuming "monitoring" government operations, to some degree falls within the scope of public interest enunciated in Reporters Committee, in this case, providing the requested information -- the names and addresses of the individual workers -- would not enhance agency enforcement of prevailing wage laws.

Some Davis-Bacon Act violations appear clearly on the face of the payroll records regardless whether names are

22

shown, e.g., the payment of a properly classified worker at a lower rate than the prevailing rate for their classification. To insure compliance, the union need only compare job classifications to pay rates to determine if the contractor pays its employees the prevailing wage. Furthermore, other violations remain undetected irrespective whether names appear, e.g., (1) the improper classification of a worker which results in payment at a lower than prevailing rate; and (2) the proper classification and compensation of a worker who then pays the contractor a "kick-back." Divulging names and addresses will have no beneficial effect on the union's ability to detect these violations.

Moreover, the ability of the union to determine whether private contractors pay their workers prevailing wages does not mean that unlimited disclosure of payroll records is in the public interest. See Hopkins, 929 F.2d at 88 ("whatever public interest there may be in knowing whether private parties are violating the law is not the sort of public interest advanced by the FOIA, and has no weight in Exemption 6 balancing"). We are reluctant to overstate the public interest served by disclosure in light of diminishing importance attributed to the monitoring function and the unproven ability of the requested information to assist in the enforcement of prevailing wage laws. Disclosure will not contribute significantly to the public's understanding of government activities.

We also believe the union enjoys alternate, less intrusive, methods by which it may collect the desired information including, but not limited to, (1) dispensing fliers to workers as they arrive and leave job sites or posting signs or advertisements designed to solicit information from workers about possible wage law violations, and (2) using existing information to compare job classifications with pay rates. See Painting Indus., 26 F.3d at 1485 ("The requesters here have less intrusive means of procuring the information they seek than having the government disgorge private information from its files"); Painting and Drywall, 936 F.2d at 1303 ("the Fund has an alternative means of access to current workers -- face to face conversation") (citation omitted).

23

b.

Against a weak public interest in disclosure, we weigh the private interest of employees in non-disclosure of their names and addresses. We begin by noting that under the more recent standards articulated by the Supreme Court in Reporters Committee and Dep't of Defense, our opinion in IBEW may have underestimated the importance of employees' privacy interests violated by the dissemination of this information. Recent appellate decisions have also underscored the substantiality of that interest and afforded it greater weight in the balancing process.

Proliferation of information about private citizens implicates neither the spirit nor the purpose of the Freedom of Information Act. See Reporters Committee, 489 U.S. at 765-66 ("[D]isclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind . . . . provisions, for deletion of identifying references . . . reflect a congressional understanding that disclosure of records containing personal details about private citizens can infringe significant privacy interests"); Painting and Drywall, 936 F.2d at 1303 ("The dissemination of this sort of information about private citizens is not what the framers of the FOIA had in mind") (citation omitted); Hopkins, 929 F.2d at 88 ("Were we to compel disclosure of personal information with so attenuated a relationship to governmental activity, however, we would open the door to disclosure of virtually all personal information, thereby eviscerating the FOIA privacy exemptions").

We recognize the Supreme Court described the interest of bargaining unit employees in non-disclosure of their home addresses only as "not insubstantial." Dep't of Defense, 510 U.S. at 500. Nonetheless, even a slight privacy interest will tip the scales in favor of non-disclosure. See id. ("Because a very slight privacy interest would suffice to outweigh the relevant public interest, we need not be exact in our quantification of the privacy interest").

The significant privacy concerns attached to the home and employees' interest in avoiding a barrage of unsolicited contact weighs heavily in our consideration. See id. at 501 ("[employees] have some non-trivial privacy interest in

24

nondisclosure, and in avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure . . . . We are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions") (citations omitted) (emphasis deleted); Hopkins, 929 F.2d at 88 ("the likelihood that the Union would use the requested identifying information to contact employees at their homes dramatically increases the already significant threat to the employees' privacy interests that disclosure of this information would entail").

At the same time, we find unconvincing the union's argument that employees have waived their privacy rights because their addresses are available from other public sources and are posted publicly at the job site.

> It is true that home addresses often are publicly available through sources such as telephone directories and voter registration lists, but in an organized society, there are few facts that are not at one time or another divulged to another. The privacy interest protected by Exemption 6 encompasses the individuals' control of information concerning his or her person. An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some forum.

Dep't of Defense, 510 U.S. at 500.

Once the union receives this information, there is no bar to others having unlimited access to it. See id. at 496 ("Congress clearly intended to give any member of the public as much right to disclosure as one with a special interest in a particular document . . . the identity of the requesting party has no bearing on the merits of his or her FOIA request") (citation omitted). It is possible that the information requested may be misappropriated by marketers, creditors, solicitors, and commercial advertisers, eroding the employees' expectation of privacy. See id. at 501 ("when we consider that other parties, such as commercial advertisers and solicitors, must have the same access under FOIA as the unions to the employee address

25

lists . . . it is clear that the individual privacy interest that would be protected by nondisclosure is far from insignificant"); Painting Indus., 26 F.3d at 1483 ("there is a substantial probability that disclosure will lead to the use of the list by marketers and a concomitant invasion of the workers' right to be let alone"); Painting and Drywall, 936 F.2d at 1303 (if "we were to find that the Fund is entitled to receive the information sought, the workers would experience a significant diminution in their expectations of privacy because that same information would also have to be provided, for example, to creditors, salesmen, and union organizers"). The prospect of this unwarranted intrusion counsels against disclosure.

IV.

The privacy interest of employees in the non-disclosure of their names and addresses substantially outweighs the slight public interest put forth by the union. Dissemination of the requested data to the union would ultimately result in an unwarranted invasion of personal privacy. To the extent that releasing this information serves a public interest, it is too attenuated to warrant a contrary result. Any other conclusion would be at odds with the core purpose of the Freedom of Information Act, namely a significant contribution to public understanding of the operations or activities of the government.

The Department of Veterans Affairs may redact the names, Social Security numbers, and addresses of Boro employees from the information requested by the union.

Accordingly, we will reverse the judgment of the district court and remand with directions to enter judgment in favor of the Department of Veterans Affairs.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

26