*937 TATEL, Circuit Judge,
concurring.
The court’s opinion assumes without deciding that the public interest in disclosure of the docket information for these six prosecutions is just as great as was the interest in disclosing the information for the 214 prosecutions the Justice Department was previously ordered to release. See Majority Op. at 935. I write separately to explain why I believe this prior disclosure has substantially reduced the value of the remaining information the ACLU continues to seek, thus further tilting the balance in favor of withholding.
In evaluating the public benefit of disclosure under FOIA Exemption 7(C), D.C. Circuit precedent requires that we focus on the “incremental value” of the “specific information” sought. Schrecker v. U.S. Department of Justice, 349 F.3d 657, 661 (D.C.Cir.2003); accord, e.g., Bast v. U.S. Department of Justice, 665 F.2d 1251, 1254 (D.C.Cir.1981); King v. U.S. Department of Justice, 830 F.2d 210, 234-35 (D.C.Cir.1987). That is, instead of simply asking whether there might be some general public interest in the subject matter of the FOIA request, we ask whether and how the information sought in' a particular FOIA request will actually cast light on the government’s activities. See, e.g., ACLU v. U.S. Department of Justice, 655 F.3d 1, 12-16 (D.C.Cir.2011) (ACLU I). Examining the incremental value of a given disclosure follows from the basic purpose of the Exemption 7(C) balancing test: determining whether a particular record or piece of information is worth the privacy costs of release requires an assessment of the potential benefits that would actually flow from release.
When assessing the “incremental value” of the information sought, we of course apply the common sense notion that the value of information depends on the mix of data already publicly available — including that previously released by the agency subject to the FOIA request. In U.S. Department of State v. Ray, 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), the Supreme Court illustrated this approach in the process of analyzing the benefit of disclosing information retained pursuant to FOIA Exemption 6, a parallel exemption that authorizes withholding records if disclosure would “constitute a clearly unwarranted invasion of personal privacy.” 5 U.S.C. § 552(b)(6). In Ray, the State Department had released documents relating to its efforts to monitor Haiti’s compliance with its promise not to persecute certain refugees. In doing so, however, the State Department redacted information regarding the identity of the refugees — information that, as the Court recognized, would, in a vacuum, have been helpful to the FOIA requesters because it would have enabled them to track down the refugees and ask them about any persecution. See Ray, 502 U.S. at 171, 177, 112 S.Ct. 541; cf. id. at 179, 112 S.Ct. 541 (observing that the Court’s resolution of the case .allowed it to avoid deciding whether derivative uses of disclosed information could qualify as a public interest in disclosure); ACLU I, 655 F.3d at 15 (“this court takes derivative uses into account in evaluating the impact of disclosure on the public interest”). The dissent cannot simply misquote away the value of this information. See Dissenting Op. at 944 (quoting from section of the Court’s opinion describing the Eleventh Circuit’s conclusion “that the redacted information would not, in' and of itself, tell respondents anything about Haiti’s treatment of the returnees or this Government’s honesty, but ... the indirect benefit of giving respondents the means to locate the Haitian returnees and to cross-examine them provided a public value that required disclosure,” Ray, 502 U.S. at 170-71, 112 S.Ct. 541.) Nevertheless, the Court rejected an effort to ascertain the refugees’ identities because the “public in *938 terest” had already been “adequately served by disclosure of the redacted interview summaries.” Ray, 502 U.S. at 178, 112 S.Ct. 541. It explained that the released “documents reveal how many returnees were interviewed, when the interviews took place, the contents of individual interviews, and details about the status of the interviewees.” Id. Thus, it concluded, “[t]he addition of the redacted identifying information would not shed any additional light on the Government’s conduct of its obligation.” Id. (emphasis added). As the Court reiterated in even clearer language: “[T]here is nothing in the record to suggest that a second series of interviews with the already-interviewed returnees would produce any relevant information that is not set forth in the documents that have already been produced.” Id. at 179, 112 S.Ct. 541; accord, e.g., Painting & Drywall Work Preservation Fund v. Department of Housing & Urban Development, 936 F.2d 1300, 1303 (D.C.Cir.1991) (concluding that the public interest in the disclosure of worker records that would provide information on agency enforcement efforts was minimal because interested parties could obtain similar information through alternative means). Perhaps, as the dissent suggests, the relevant privacy interest in Ray was more substantial than here. See Dissenting Op. at 943-44. But FOIA requires us to balance privacy interests against the benefits of disclosure, and the critical point for our purposes is that in Ray the Court evaluated the latter by examining the incremental effect of the information sought in light of prior disclosures.
Consistent with the forgoing principles, and given the unique way in which this case has evolved, I believe that the public interest at issue here is less than it was when the case was previously before us. Of course, there is little doubt that “[t]he use of and justification for warrantless cell phone tracking” continues to be a “topic of considerable public interest.” ACLU I, 655 F.3d at 12; see, e.g., Kate Zernike, Court Restricts Police Searches of Phone Data, N.Y. Times, July 19, 2013, at A1 (describing differing positions taken by courts on the legality and propriety of this investigatory technique); Joe Palazzolo, Montana Requires Warrants for Cell Phone Tracking, Wall St. J.L. Blog, June 21, 2013, http://blogs.wsj.com/law/2013/06/ 21/montana-requireswarrants-for-cell-phone-traeking (describing efforts by states to require police to obtain a warrant in order to access cell phone tracking information). The disclosure of these six cases could also “shed[]” at least some additional “light on the scope and effectiveness” of this practice. ACLU I, 655 F.3d at 13.
But most of the benefit we anticipated from the release of the requested docket information flowed from the fact that access to a large sample of prosecutions would provide a basis for the public to discern general trends regarding the government’s use of cellphone tracking data and the means by which the government obtains such data. For example, we observed that disclosure would “provide information about the kinds of crimes the government uses cell phone tracking data to investigate,” the “standards the government uses to justify warrantless tracking,” and “facts regarding the duration of tracking and the quality of tracking data.” Id. at 13-14. As a result of the district court’s and our own prior decisions, however, the Department has already released docket information for 214 prosecutions in which the government obtained cell phone tracking data without a warrant, and those 214 cases presumably provide much of the necessary basis for assessing when, how, and why the government utilizes this particular investigative tool. Compare■ with id. at 14-15 (rejecting government’s argument that release of the information was unnec *939 essary due to the “extensive public attention that this issue is already receiving,” because “much of the information the plaintiffs seek to.develop from the FOIA disclosure ... .is not currently in the public domain” (internal quotation marks omitted)). True, the six remaining cases could contain some interesting anecdotal evidence: the ACLU speculates that it is “more likely that a failed prosecution involved” a “motion[] to suppress evidence derived from cell phone tracking,” and that suppression hearings are particularly likely to yield useful information. Appellants’ Br. 33-34; see also ACLU I, 655 F.3d at 14 (describing information that could be derived from suppression hearings). Even so, if the Department’s disclosure of 214 prosecutions has failed to reveal the nature and extent of the government’s practice of obtaining cell phone tracking data without a warrant, the probability that disclosure of these six remaining cases would yield significant benefits is relatively low. To paraphrase the Supreme Court in Ray, there is little to suggest that these six cases “would produce any relevant information that is not set forth in the [214 prosecutions] that have already been produced.” 502 U.S. at 179, 112 S.Ct. 541.
The ACLU argues that applying the “incremental value” test in this fashion would give federal agencies license to arbitrarily withhold portions of requested records — presumably “the more important or embarrassing responsive records” — on the ground that the public interest in disclosure will be satiated by the records they choose to actually release. Appellants’ Br. 35. Although I have no doubt that this court would look with great suspicion on any attempt to manipulate FOIA in this fashion, this case involves no such mischief. It is well-established that federal agencies may disclose particular records or portions of records responsive to a request ■without disclosing all responsive records so long as they have some legitimate FOIA-based reason for doing so. See 5 U.S.C. § 552(b) (“Any reasonably, segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt----”); Assassination Archives & Research Center v. CIA, 334 F.3d 55, 58 (D.C.Cir.2003); see also, e.g, Ray, 502 U.S. at 178-79, 112 S.Ct. 541; King, 830 F.2d at 234-35 (D.C.Cir.1987) (permitting government to release investigative report with portions redacted in order to protect privacy interest of individuals named). When, for example, an agency withholds certain records that implicate greater privacy interests than those it releases, and then evaluates the public benefit of releasing these remaining records in light of the information already released, it acts just as FOIA requires — efficiently trading off privacy costs and disclosure benefits. That is almost exactly what happened here. Having released all of the information our prior decision required, the Department now resists disclosure of a particular type of information that implicates stronger privacy interests. That being so, I see no reason to now disregard this prior disclosure. Just as we would certainly take account of the existence of the docket information for these 214 cases had it been uncovered and published by the Washington Post, we may take account of it here even though its release resulted from this litigation.