**Barbara SCHWARZ, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF TREASURY, et al., Defendants.**

**No. CIV.A. 98–2406(HHK).**

United States District Court, District of Columbia.

Nov. 30, 2000.

144

Barbara Schwarz, Salt Lake City, UT, Pro se.

Karen M. Finnegan, U.S. Department of Justice, Cynthia Harrison Anderson, Department of Justice, Office of Information & Privacy, Washington, DC, for Defendants.

## MEMORANDUM

KENNEDY, District Judge.

This is an action brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a. Plaintiff, proceeding pro se, sues 79 entities of the federal government,[1] seeking records regarding herself, Mark Rathbun (de Rothschild), members of his family, President Dwight David Eisenhower, Rosemarie Bretschneider, L. Ron Hubbard, Sarah Hubbard, the Church of Scientology, alleged German Nazi-conspiracies infiltrating the United States Government, and any Independent or Special Counsel who has investigated the alleged wrongful incarceration of Mark Rathbun.[2]

Presently before the court is Defendants' motion to dismiss or, in the alternative, for summary judgment. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that Defendants' motion should be granted.[3]

---

1. Plaintiff names 18 subdivisions of the Department of Justice, 7 United States Attorneys' Offices, 5 branches of the Federal Bureau of Investigation, the main office of the United States Marshals' Service and 9 branch offices, the Secret Service of the Department of the Treasury, the Department of State, the National Military and National Civilian Personnel Records Centers, the Executive Office of the President, the Vice President, the National Aeronautics and Space Administration, the Department of Veterans Affairs, the National Records Center in Suitland, Maryland, and several branches of the Department of Defense.

2. Letters from Plaintiff submitted with the Declarations supporting the motion for summary judgment indicate that she also sought information about an individual named Claude de Rothschild, who she alleges was a General in the U.S. Army and was renamed Rathbun by the U.S. Secret Service.

3. Defendants' motion is accompanied by 83 declarations of persons with appropriate knowledge of Plaintiff's requests. The declarations describe the record keeping procedures of the agencies and the agencies' responses to Plaintiff's requests. In some instances copies of the disclosed documents

## I. BACKGROUND

It appears that Plaintiff believes that Rathbun is her husband and is incarcerated because he was framed by a German-controlled Nazi conspiracy of having raped and murdered her. Plaintiff alleges that she is a witness to Rathbun's wrongful incarceration and that he continues to be wrongfully held because he cannot find her and she cannot find him. Plaintiff also contends that she is the grand-daughter of President Eisenhower and was kidnaped by the Germans when she was a child, in retaliation for his defeat of the Nazis in World War II.[4]

Plaintiff's numerous FOIA requests of each defendant entity were slightly different. In many instances Plaintiff asked for all requests for information regarding herself made by or on behalf of Mark Rathbun or an Independent or Special Counsel. Plaintiff objects that the Defendants have not produced the requested records and have not given her declarations as to their

are attached. For example, the United States Secret Service produced documents relating to Plaintiff's visit to Washington in April, 1986, her detention for causing a disturbance at a restaurant, her arrest for unlawful entry at the White House, and her evaluation at Saint Elizabeth's Hospital. INTERPOL produced copies of telegrams from 1988 indicating that German authorities sought assistance in locating Plaintiff, who had disappeared and was described as "confused" at times. The Secret Service records suggest that Plaintiff had come to the United States from Germany to warn President Reagan of danger from the KGB and also to find either her brother Frank (who had been kidnaped by the KGB) or Frank E. Brown, described as the father of her brother Frank. Defendants' Motion, Declaration 1. One Defendant, the Adjutant General of the Montana National Guard, sent Plaintiff two pages of records regarding L. Ron Hubbard. Plaintiff claims this is inadequate because Hubbard allegedly served in the Montana National Guard and the office must have more papers relating to him. (Count 57).

Plaintiff's response consists of a declaration of 519 pages with 1643 paragraphs (plus copies of some of her requests) and 328 additional pages of copies of her correspondence with the agencies, many of which are duplicates of documents provided by Defendants in their motion papers. The Court notes that in her request to the Army's Intelligence and Security Command, Plaintiff sought records of a Frank Eugene Brown from Oklahoma who she claimed might have been sent to Germany in 1960 to "bring her back." The search did not locate any records of this individual. Defendants' Motion, Declaration 58. The Army Claims Service, however, did locate records indicating that in 1995 Plaintiff and Rosemarie Bretschneider filed a claim seeking back child support from Frank Brown for Frank Nikolaus Schubert, allegedly ordered by a German court in 1965. The claim and a related civil suit in Oklahoma were dismissed. Defendants' Motion, Declaration 61.

4. From a Declaration dated October 8, 1997, provided by Plaintiff to several agencies and submitted by both Plaintiff and Defendants with their declarations, it appears that Plaintiff contends that President Eisenhower was the father of L. Ron Hubbard, that Plaintiff is Hubbard's daughter Sarah and was born in Salt Lake City, Utah in August, 1955, that she was kidnaped three times between 1955 and 1960 and taken to Germany where she was renamed Barbara or Barbel Bretschneider and raised by a German citizen named Rosemarie Bretschneider. She claims that in the early 1970's her father "got hold of" her and they lived together in the United Kingdom. She married Mark Rathbun but they were "ambushed by the Germans in Europe." The Germans aborted her child and "mind controlled us with hypnosis and laser proceedings were done to our memory banks of our brains, with the result that we forgot our past." Their memories returned when she "[ran] into Mark or Marty again in 1984." Defendants' Declaration 53, Attachment 3; Declaration 57, First Attachment.

Some of Plaintiff's documents identify Rathbun as a high official in the Church of Scientology and name Rosemarie Bretschneider the moving party in Rathbun's prosecution.

Plaintiff was advised in response to her request to the National Personnel Records Center that records show no connection between Eisenhower and Hubbard, that Eisenhower had two sons who were John and a child who died in infancy, that John has four children, none of whom are named Sarah and none of whom was ever kidnaped, that Hubbard had two children who were a son and a daughter Catherine, and there was no evidence that Hubbard had a daughter Sarah or a kidnaped child. *See* Appendices to Declaration of David Petree, Declaration 46 in support of Defendants' Motion for Summary Judgment.

systems of records and the scope of the searches made pursuant to her requests. She also objects to the refusal of certain Defendants to waive the usual fee for copies of records of previous FOIA cases she has filed. She suggests that one can infer that these Defendants are withholding the records she seeks because these Defendants initially sent her only a printout of her previous cases rather than copies of all documents related to those cases.

## II. LEGAL STANDARDS

The many documents submitted by the parties have been reviewed under the following legal standards and principles. The court may dismiss a complaint on the ground that it fails to state a claim upon which relief can be granted if it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. Fed.R.Civ.P.12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *Thomas v. District of Columbia*, 887 F.Supp. 1, 5 n. 2 (D.D.C.1995).

A motion for summary judgment should be granted if the moving party demonstrates, when the facts are viewed in the light most favorable to the opponent, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248, 106

S.Ct. 2505. Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C.Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

The Privacy Act, 5 U.S.C. § 552a, provides a procedure under which individuals can obtain access to information *about themselves* maintained by federal government agencies, but which protects individuals against unrestricted disclosure of such information without their consent. The information that may be disclosed is only that which is "maintained by an agency" (Section 552a(a)(4)) in a system of records, that is, "a group of any records ... from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." Section 552a(a)(5). Of special relevance to Plaintiff's request for information regarding individuals other than herself is the firm prohibition against disclosure "to any person ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." Section 552a(b).[5] There are certain exceptions to this prohibition, however. The only one that might arguably be relevant here is Exception 8, "pursuant to a showing of compelling circumstances affecting the health or safety of an individual ...."

■ In a FOIA case, the Court may grant summary judgment solely on the basis of information provided in a declaration, when the declaration describes "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed ex-

---

5. Plaintiff does not provide consents from any of the individuals about whom she sought      records.

emption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). *See also Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

### III. ANALYSIS

■ Preliminarily, the Court notes that Plaintiff is under the misapprehension that an agency responding to a Privacy Act or FOIA request must provide a "search certificate" and a "Vaughn" index. Many of her complaints in correspondence to the agencies, as well as in her court documents, are that the agencies responded generally to her requests and did not provide an affidavit containing a detailed list of the records searched, the documents withheld, and the reasons for withholding those documents. Plaintiff is advised that there is no requirement that an agency provide a "search certificate" or a "Vaughn" index on an initial request for documents. The requirement for detailed declarations and Vaughn[6] indices is imposed in connection with a motion for summary judgment filed by a defendant in a civil action pending in court. *See, e.g., Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984).

The declarations filed on behalf of Defendants and Plaintiff's own declaration have been reviewed carefully. In all instances, Defendants have shown either that (1) no responsive documents exist or (2) all responsive documents have been produced and that there is appropriate justification for any excisions made, or (3) the documents sought are exempt from disclosure. Plaintiff has not shown that there is a genuine issue of material fact to contradict the Defendants' statement of material facts submitted with their motion. It is not necessary to engage in an extensive discussion of the facts relating to each Defendant. Reference to a representative sample of the different kinds of responses will suffice.

■ To reiterate Plaintiff seeks documents regarding persons other than herself, including Mark Rathbun, but has not provided consents from those individuals. With respect to her document requests regarding Rathbun, Plaintiff contends that compelling circumstances affecting the health and safety of Rathbun bring her requests within the "health and safety" exception to the prohibition against disclosure of documents concerning persons other than the requester. The court disagrees. The United Court of Appeals for the Tenth Circuit has specifically held that Plaintiff's unsubstantiated allegations alone do not constitute a "showing of compelling circumstances." *Schwarz v. Interpol,* 48 F.3d 1232, 1995 WL 94664 at *2 n. 2 (Feb. 28, 1995). Accordingly, Plaintiff is not entitled to release under the Privacy Act of information regarding Mark Rathbun or any of the other individuals about whom she has sought information.

■ Offices within the White House whose functions are limited to advising and assisting the President do not come within the definition of an "agency" within the meaning of FOIA or the Privacy Act. This includes the Office of the President (and by analogy the Office of the Vice President) and undoubtedly the President and Vice President themselves. *See Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150–55, 100 S.Ct. 960,

---

**6.** *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94

S.Ct. 1564, 39 L.Ed.2d 873 (1974).

63 L.Ed.2d 267 (1980); *McDonnell v. Clinton*, No. 97–1535, slip op. at 1–2 (D.D.C. July 3, 1997), *aff'd*, 132 F.3d 1481 (D.C.Cir. 1997) (unpublished table decision), *cert. denied*, 525 U.S. 853, 119 S.Ct. 130, 142 L.Ed.2d 105 (1998). Plaintiff has been so advised in a previous case filed by her, *Schwarz v. Clinton*, No. 96–1462 (D.D.C. July 2, 1996), *aff'd*,1996 WL 739026, 104 F.3d 1407 (D.C.Cir. Nov. 29, 1996). Consequently, Defendants' motion regarding information sought from these entities is well taken. Any future attempt to name this entity in an action under the FOIA or Privacy Act may be subject to dismissal as malicious. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

Plaintiff's claim regarding documents maintained by INTERPOL has already been resolved against her in a case she filed previously in this court, *Schwarz v. United States Dep't of Justice*, No. 95–2162, slip op. at 4 (D.D.C. May 31, 1996), as well as in a case she litigated in the District of Utah and the Court of Appeals for the Tenth Circuit, *Schwarz v. Interpol*, 48 F.3d 1232 (10th Cir.), *cert. denied*, 515 U.S. 1146, 115 S.Ct. 2587, 132 L.Ed.2d 835, *reh'g denied*, 515 U.S. 1180, 116 S.Ct. 24, 132 L.Ed.2d 907 (1995). Any further attempt to litigate this claim is also subject to dismissal as malicious.

■ In some instances Plaintiff failed to exhaust her administrative remedies. Three offices of the United States Marshals' Service named as Defendants never received any requests from Plaintiff for documents. Although only the Department of Justice is properly named as a Defendant on behalf of all its branches, courts have upheld agency requirements that a request for records be made in the first instance to the individual office in which the records may be kept. *See Judicial Watch, Inc. v. United States Dep't of Justice,* No. 97–2089, slip op. at 9–11 (D.D.C. July 14, 1998). In the case of NASA and the Defense Logistics Agency (part of the Department of Defense), Plaintiff failed to respond when sent a copy of the agency's fee schedule. Exhaustion of administrative remedies, a prerequisite to suit, includes payment of required fees or an appeal within the agency from a decision refusing to waive fees. *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 66 (D.C.Cir.1990); *Trueblood v. United States Dep't of Treasury*, 943 F.Supp. 64, 68 (D.D.C.1996). The counts as to these Defendants will be dismissed for failure to state a claim on which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6).

■ Several Defendants provided declarations explaining either that the agency is not the type of agency that would have the records Plaintiff seeks (*e.g.*, the Defense Logistics Agency, Declaration 56) or that no responsive records were located. (*e.g.*, the Department of the Army, United States Army Intelligence and Security Command, Declaration 58, and the National Imagery and Mapping Agency, Declaration 64). Plaintiff refuses to accept a response that the agency has no responsive records. Even when a declaration describes the details of an extensive search, Plaintiff insists that the agency has responsive records that it is hiding from her in bad faith, often pursuant to the alleged German Nazi conspiracy. (*compare* Declaration 65 from the Defense Threat Reduction Agency, *with* Plaintiff's Affidavit in Opposition to Defendants' Motion at 358ff).

As this Court stated in a previous case filed by Plaintiff, *Schwarz v. National Security Agency, et al.*, No. 98–0066 (D.D.C. July 20, 1998),

The FOIA … does not require an agency to conduct an exhaustive search for all documents responsive to a request, but rather a reasonable search for requested records using "methods reasonably expected to produce the information requested." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 58 (D.C.Cir.1990). "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that ex-

plain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982). The affidavit need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry,* 684 F.2d at 127, but must show only "that the search method was reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984).

Moreover, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C.Cir.1991). *Accord Steinberg v. United States Dep't of Justice,* 23 F.3d 548, 552 (D.C.Cir.1994). The district court in this earlier case concluded that the defendants' affidavits were sufficient and that Plaintiff had offered no evidence that responsive records existed and no evidence of bad faith. The grant of summary judgment for the Defendants was affirmed by the Court of Appeals in *Schwarz v. National Security Agency, et al.,* 172 F.3d 921 (D.C.Cir.1998). The memorandum opinion of the Court of Appeals emphasized that "[t]he fact that no documents were found does not mean that the government failed to perform an adequate search." Citing *Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir.1986), the court pointed out that "the government can never conclusively refute a claim that yet unproduced records exist." These principles are valid and apply to the "no records"

responses provided by the agencies in this case.

Even when documents have been produced, Plaintiff is not satisfied. She argues without any factual basis that there are additional documents that have not been produced. *Compare* Declaration 61 from the Army Claims Service, *with* (Plaintiff's Affidavit in Opposition to Defendants' Motion at 325 ff.). She asserts that any misspelling of her name, any mail delay, any failure to acknowledge her request is done deliberately and in bad faith. There is no reasonable basis for such assertions. The courts review of the declarations provided by the dozens of Government agencies shows that each has sought diligently to satisfy Plaintiff's repetitive requests. For example, although the Civil Division of the Department of Justice denied Plaintiff's request for a fee waiver,[7] it did produce certain documents from her earlier cases in response to her FOIA request, being careful to avoid sending documents that Plaintiff herself had generated.

Some agencies that produced records invoked various FOIA/Privacy Act exemptions to delete portions of the records. In every instance the agency has shown that application of the exemption was proper. For example, the response of the Justice Department's Office of Intelligence and Policy Review points out that records regarding Plaintiff herself are exempt from production under Privacy Act exemption (k)(1), 5 U.S.C. § 552a(k)(1), incorporating FOIA exemption I. The Office properly refused to confirm or deny that it had any responsive records maintained under the Foreign Intelligence Surveillance Act of 1978 (FISA) and in non-FISA files relating to various intelligence techniques. This

---

7. This denial was proper. Plaintiff did not, and does not now, show that production to Plaintiff of additional documents at public expense "is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). Despite Plaintiff's contention that the public interest is furthered by her search for wrongly imprisoned Mark Rathbun, which would disclose a German

Nazi conspiracy, there is sound basis for the conclusion that the search is fruitless simply because Rathbun has *not* been convicted of raping and murdering Plaintiff and is *not* being held incommunicado. *Cf. Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). *See also Ely v. United States Postal Serv.,* 753 F.2d 163, 165 (D.C.Cir.), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2338, 85 L.Ed.2d 854 (1985).

response, known as a "Glomar" response,[8] was entirely correct for the reasons stated in the supporting declaration of Frances Townsend. *See Hunt v. CIA*, 981 F.2d 1116, 1119–20 (9th Cir.1992); *Miller v. Casey*, 730 F.2d 773, 776 (D.C.Cir.1984); *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C.Cir.1982).

■ The Secret Service produced a number of documents relating to an investigation of Plaintiff in 1986 after she was detained in the District of Columbia in 1986. *See supra* note 5. The Secret Service invoked Exemptions 2 and 7(E) to withhold portions of those records such as a code name for a Secret Service vehicle, White House gate numbers, information concerning personal characteristics used by the Secret Service in evaluating the dangerousness of a subject and the threat potential to individuals protected by the Secret Service. This kind of material is clearly exempt from disclosure. *See Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073–74 (D.C.Cir.1981)(en banc). Portions of other documents were withheld under the deliberative process privilege, Exemption 5. These consist of preliminary evaluations by Secret Service personnel of a potential threat to a person protected by the Service and were properly excised from the documents produced to Plaintiff.

■ The identities of certain federal employees were withheld from other documents pursuant to Exemption 6, covering "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Disclosure of these names could subject the individuals to unwanted harassment but would not contribute to the public understanding of government functions. Excision was, therefore, justified. *See, e.g., United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763–65, 774, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1494 (D.C.Cir. 1993).

■ Certain offices of the Department of Justice employed a "Glomar" response in connection with Exemption 7(C) to decline to admit or deny the existence of documents responsive to Plaintiff's requests.[9] These are the departments that would most likely have documents regarding the alleged conviction and imprisonment of Mark Rathbun. The courts have, however, upheld the use of the "Glomar" response in connection with a request for law enforcement records of a third party. *See, e.g., Enzinna v. Department of Justice*, No. 97–5078, 1997 WL 404327, at *2 (D.C.Cir.1997); *Beck*, 997 F.2d at 1494. Plaintiff does not have consent to disclosure from any of the third parties. The Court finds that disclosure of any records that might exist would not be informative of the performance of the respective agencies.[10]

■ The Secret Service, the FBI, and the Bureau of Prisons invoked Exemption 7(C) to withhold from certain documents the names and other identifying information of individuals involved in law enforcement investigations. On balance, the privacy interest of the individuals outweighs Plaintiff's interest in obtaining their names

---

**8.** *See Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C.Cir.1976) (relating to requests for records of the submarine retrieval ship "Glomar Explorer").

**9.** These are the Office of Professional Responsibility, the Criminal Division, the United States Marshals Service, and the FBI.

**10.** Although an impartial observer might doubt that any records exist anywhere show-

ing that Rathbun was convicted of raping and murdering Plaintiff as the victim of a Nazi conspiracy provoked by Rosemarie Bretschneider, it is conceivable that the Defendant agencies have records referring to Rathbun in connection with a different criminal investigation. Rathbun clearly would have a privacy interest in those records, whether he is mentioned as a victim, a witness, or a subject of the investigation.

and identifying information. Therefore, application of the exemption was justified.

## IV. CONCLUSION

After reviewing the documentation provided by Defendants and Plaintiff the court concludes that Defendants have conducted appropriate searches to determine whether responsive records exist and have produced all relevant non-exempt documents or non-exempt portions thereof. Consequently, the complaint will be dismissed for failure to state a claim against the United States Marshals Service, the Office of the President, INTERPOL, NASA, and the Defense Logistics Agency, and those defendants who are named in the caption but against whom no claim is stated in the body of the complaint. The complaint will be dismissed as to the remaining defendants because there are no material facts in dispute and they are entitled to judgment as a matter of law.